(66 Misc. Rep. 169.)

### STIEGLITZ v. COHEN.

(Supreme Court, Appellate Term. February 18, 1910.)

LANDLORD AND TENANT (§ 211*)—LEASE—LIABILITY FOR RENT.

    A lease providing that in case of partial damages to the building by fire the landlord shall repair the same, and the rent shall be paid proportionately up to the time when the fire takes place, but in case of total destruction by fire the rent shall be paid up to the time of such destruction and the lease shall then cease, abates the rent during the period of repair after a partial damage by fire, but the rent must be paid up to the time of the fire, and the term continues thereafter.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 845; Dec. Dig. § 211.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Albert Stieglitz, as executor of Leopold Zinsheimer, deceased, against Julius M. Cohen. From a judgment for plaintiff, entered on a verdict rendered by direction of the court, defendant appeals. Reversed, and new trial granted.

Argued before SEABURY, LEHMAN, and BIJUR, JJ.

Davis & Dworsky (Harold P. Dworsky, of counsel), for appellant.
Simpson, Werner & Cardozo (Mayer J. Weinstein, of counsel), for respondent.

LEHMAN, J. The plaintiff sues upon an oral complaint for rent for the months of June and July, 1909, of certain premises which were damaged by fire on May 18, 1909. The answer was a general denial, no repairs, partial destruction by reason of fire, and suspension of rent from June 1 to July 15, 1909. At the trial the defendant offered to prove the damage to the building on May 18th, rendering it impossible to carry on his business upon the leased premises, and that they were repaired only on July 15th. The trial justice ruled out all such testimony, holding that under the lease the landlord covenanted to repair, but that there was no suspension of rent pending the repairs, and the tenant's sole remedy for a breach of the landlord's covenant was to repair the premises himself and counterclaim for the expense, or to surrender the premises.

The lease is not made on a printed form, and is in some respects awkwardly and inartificially expressed, and several clauses are almost unintelligible. The clause regulating the rights of the parties in case of fire provides:

"Said landlord further agrees that, in case the building or buildings erected on the premises hereby demised shall be partially damaged by fire, the same

shall be repaired as speedily as possible at the expense of the landlord, and the rent shall be paid proportionately up to the time when said fire took place; but in case of total destruction by fire or otherwise the rent shall be paid up to the time of such destruction, and then and from thenceforth this lease shall cease and come to an end."

. Clearly by the use of the words "partially damaged" and "total destruction" the parties intended to provide for any conceivable damage by fire, and have thereby "entered into a written agreement which overrides the statutory provisions, within the rule recognized in the case of Butler v. Kidder, 87 N. Y. 98." Roman v. Taylor, 93 App. Div. 449, 451, 87 N. Y. Supp. 653, 654. The case differs in this respect from New York Real Estate & B. I. Co. v. Motley, 143 N. Y. 156, 38 N. E. 103, where the words of the lease were so restricted that they did not include damages less than total destruction, but sufficient to render the premises untenantable. The statute (section 227, Real Property Law, Consol. Laws 1909) therefore has no application, and the rights of the parties depend solely upon the interpretation of this clause.

The clause does not specifically provide for a suspension of rent pending repairs, but it certainly contemplates that from the date of the fire the rent shall not be paid in the same way as before the fire; for otherwise the words "and the rent shall be paid proportionately up to the time when said fire took place" become meaningless. The plaintiff claims that they are meaningless, because, if we hold that they suspend the rent absolutely during repairs, then the landlord might be deprived of his total rent pending repairs of a single door or window, if a single door or window should be damaged by fire. I am not at all sure that the meaning of the parties was not to suspend the rent absolutely in spite of this possible hardship; for by the juxtaposition of these words with the covenant of the landlord to repair "as speedily as possible" they might well be intended to represent an inducement for speed. However, I do not think that they must necessarily be interpreted in this way.

This same clause of the lease provides that in case of the total destruction of the buildings on the premises "the rent shall be paid up to the time of such destruction, and from thenceforth this lease shall cease and come to an end." While parties sometimes use words whose meaning we cannot understand, where they use practically the same phrase twice in the same clause, but in one case introduce an additional word, we must presume that that word was introduced with some intent. If the rent was to cease from the time of the fire, whether the damage was partial or the destruction was complete, then the word "proportionately" would naturally have been used in both or neither. It seems to me that it was used with intent in the first contingency, and that the parties meant thereby that from the date of the fire the rent should be paid "proportionately" to the rent paid up to the time when said fire took place; that is, that pending repairs the parties shall pay for partial occupation a sum based upon the rental for full occupation.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

BIJUR, J. I concur in the result. As I read the clause of the lease in question, it means that in case of partial damage the premises shall be repaired, the rent paid up to the time of the fire, and that the term shall continue thereafter. This appears clearly from a reading of the succeeding clause, which begins with a disjunctive thus: But in case of total destruction the rent shall be paid up to the date of destruction, and then the lease shall cease. If, however, it was intended that in case of partial damage the term of the lease should continue after repairs made, and the rent be payable uninterruptedly during the time occupied by the repairs, it would have been superfluous and absurd to recite specially that the rent should be paid up to the time of the fire. The inference, therefore, is plain that it was intended that the rent should abate during the period of repair.

The court below erred in excluding the evidence offered as to the condition of the premises and the time occupied by the repairs.

SEABURY, J., concurs with BIJUR, J.